IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE GALES, | ) | CASE NO. 1:17CV2281 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN KIMBERLY CLIPPER, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Maurice Gales ("Petitioner" or "Gales") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Gales is detained at the Lorain Correctional Institution, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of one count of rape and one count of kidnapping.  *State v. Gales*, Case No. CR-14-588092-A (Cuyahoga Cty. Common Pleas Ct., filed March 9, 2015).  At sentencing, the trial court merged the two counts and sentenced Gales to 10 years in prison.  Doc. 6-1, p. 40.

On October 27, 2017, Gales filed his Petition for Writ of Habeas Corpus setting forth eight grounds for relief.  Doc. 1, pp. 7-8.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Ground 4 is not cognizable, Grounds 2, 3, and 5 are not cognizable and/or fail on the merits, and Grounds 1, 6, 7 and 8 fail on the merits.  Thus, the undersigned recommends that Gales' Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

## A. State Court Action

### 1. Underlying Facts

The following summary of underlying facts is taken from the opinion of the Cuyahoga

County Court of Appeals, Eighth Appellate District of Ohio:[1]

{¶ 4} The case proceeded to a jury trial. The victim, who at the time was 17 years old, testified that she knew appellant only by his nickname and that she had his pager number. On August 13, 1994, she went on a double date with appellant and invited him back to her apartment. At some point, she decided to change into her nightgown because it was getting late, she was ready to go to bed, and she wanted to signal that it was time for appellant to leave. She testified that she remembered kissing appellant, but when he began touching her and doing more than she was comfortable with she told him "no." She testified that she ended up on the floor with appellant on top of her, raping her, while she was yelling and screaming. She stated her nightgown was torn and she had pulled on the curtains. She testified that when appellant left, she called 911, and that appellant came back in, heard her on the phone, and then he ran off for good.

{¶ 5} The victim further testified that after calling the police, the father of her child, Z.T., arrived at her apartment for a visit, along with his cousin, and she told him what happened. Z.T. testified that when he knocked on the window to the victim's apartment, he saw the victim sitting down, but she did not respond. He then went to the door and was let in. As soon as he was let into the apartment, the victim started crying and he asked the victim what had happened. The victim told him that she had just been raped and that she had called the police.

{¶ 6} After the police arrived, the victim told them what happened and provided a description of the suspect and a pager number. Z.T. provided a false name to the police because he had an outstanding warrant. The responding officer testified that he got a description of the suspect and of his vehicle.

{¶ 7} A neighbor of the victim's at the time of the incident testified at trial that he was in bed with his wife and heard some banging and a woman screaming. He looked outside and saw a male, whose description matched that provided by the victim, pounding on the window of an apartment. The neighbor saw the male's face before he took off. The neighbor identified the male as the appellant in the courtroom.

---

[1] Gales has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

{¶ 8} The victim was taken to a hospital and examined. The nurse who performed the examination testified that the victim was "somewhat tearful," and the nurse noted tenderness during the examination.

{¶ 9} A few days later, the victim looked through photographs at the police station but did not recognize anyone. The case went cold.

{¶ 10} On August 30, 2012, the rape kit was submitted to the Ohio Bureau of Criminal Investigation for DNA testing. The testing found a DNA profile consistent with appellant.

{¶ 11} A photo array, which contained a photo of the appellant, was presented to the victim by a blind administrator. The victim selected a photo of a person who looked familiar to her, but she was unsure if it was her attacker. Although the photo was not appellant, the victim indicated that none of the victims in the photo array was a consensual sex partner.

{¶ 12} Appellant was found guilty of both rape and kidnapping. Following merger of the offenses and the state's election to proceed to sentencing on the rape count, the trial court sentenced appellant to a prison term of ten years. The court imposed five years of mandatory postrelease control and designated appellant as a sexually oriented offender.

*State v. Gales*, 2016 WL 694560, at ** 1-2 (Ohio Ct. App. Feb. 18, 2016).

### 2. Procedural History

On August 7, 2014, a Cuyahoga County Grand Jury issued an indictment charging Gales with one count of rape, R.C. § 2907.02(A)(2), and one count of kidnapping, R.C. § 2905.01(A)(4).  Doc. 6-1, p. 3.  Gales, through counsel, pleaded not guilty.  Doc. 6-1, p. 5.

Prior to trial, Gales, through counsel, filed a motion to dismiss the indictment due to the state's pre-indictment delay.  Doc. 6-1, p. 6.  The trial court held a hearing (Doc. 6-2, pp. 5-43) and issued an order denying Gales' motion.  Doc. 6-1, pp. 25-26.

At the conclusion of the trial, the jury found Gales guilty on both counts.  Doc. 6-1, p. 27. At sentencing, the trial court merged the two counts and sentenced Gales to 10 years in prison. Doc. 6-1, p. 40.

### B. Direct Appeal

Gales, through counsel, appealed to the Ohio Court of Appeals, Eighth Appellate District.

Doc. 6-1, p. 41.  In his brief, he raised the following assignments of error:

1. The trial court erred and abused its discretion in denying the defendant's motion to dismiss the indictment and this error violated his due process rights under the Fifth Amendment.

2. The State of Ohio failed to disclose to the defense prior to trial that a state witness had informed it that he could make an identification of the defendant which was a due process violation and such violation denied him a fair trial.

3. The trial court erred and abused its discretion when it allowed a state witness to testify that the victim told him that she was raped by a male which is hearsay under Rule 801 and this error violated his Sixth Amendment right of confrontation.

4. The trial court erred and abused its discretion by improperly restricting the defendant's right to cross examine the state's witness regarding the details of conviction for voluntary manslaughter when he denied his guilt and this ruling denied Gales' Sixth Amendment right of confrontation.

5. The trial court erred and abused its discretion when it allowed the state to introduce hearsay statements of state witness Latisha Giles in violation of Rule 801 of the Ohio Rules of Evidence, and such error was a due process violation.

6. The State of Ohio committed prosecutorial misconduct by improperly insinuating that the defendant's investigator was unlicensed, although she knew that a license was not statutorily required for an individual to engage in investigatory activities of interviewing witnesses, this action violated the defendant's right to a due process of law, and denied him a fair trial.

7. The trial court erred and abused its discretion by preventing the defendant from presenting a defense witness to testify concerning relevant issues, and such action amounted to a due process rights violation.

8. The trial court erred when it allowed a flight instruction over the objection by the defense and this ruling violated his right to due process of law.

Doc. 6-1, pp. 51-52.  The state cross-appealed Gales' sentence.  Doc. 6-1, p. 83.  On February 18, 2016, the Ohio Court of Appeals affirmed the trial court's judgment and sentence.  Doc. 6-1, pp. 141-159.

Both parties filed appeals to the Ohio Supreme Court.  Doc. 6-1, pp. 160, 189.  In his memorandum in support of jurisdiction, Gales raised the following propositions of law:

4

1. An accused should be granted a dismissal of an indictment when there is an unreasonable pre-indictment delay that results in a due process violation under the Fifth and Sixth amendments.

2. A prosecutor who fails to disclose to the defense, prior to trial, that a state witness had informed her that he could make an identification of Gales is a due process violation and such a violation denies him a fair trial.

3. A State witness cannot be allowed to testify that the victim previously told him that she was raped by a male which is inadmissible hearsay under Rules 801 & 803, and this error violated his Sixth Amendment Right of Confrontation.

4. A trial Court cannot improperly restrict the defendant's right to cross examine witnesses regarding the details of conviction when the witness denied his guilt and his ruling denied Gales' Sixth Amendment Right of Confrontation.

5. The state cannot introduce hearsay statements in violation of Rule 801 of the Ohio Rules of Evidence, and such error was a due process violation.

6. The State commits prosecutorial misconduct by improperly insinuating that an investigator was unlicensed, is a due process violation.

7. An accused cannot be prevented from presenting a defense witness to testify concerning relevant issues, and such action amounted to a due process violation.

8. A flight instruction should not have been given by the Court without a sufficient factual basis, is a due process violation.

Doc. 6-1, pp. 193.  On July 27, 2016, the Supreme Court of Ohio accepted the state's appeal and declined jurisdiction of Gales' appeal.  Doc. 6-1, p. 213.  The Supreme Court of Ohio thereafter affirmed the appellate court's judgment and sentence.  Doc. 6-1, p. 214.

### C. Federal Habeas Petition

On October 27, 2017, Gales, through counsel, filed his Petition for a Writ of Habeas Corpus.  Doc. 1.  He listed the following grounds for relief:

**Ground One**: The petitioner was denied his due process rights under the Fifth Amendment when his motion to dismiss indictment was rejected by trial court.

**Ground Two**: The petitioner's right to due process was violated when the State of Ohio failed to disclose to the defense prior to trial that a state witness had informed it that the [sic] could make an identification.

**Ground Three**: The petitioner's Sixth Amendment Right of confrontation was violated when trial court allowed a state witness to testify that the victim told him that she was raped by a male which is hearsay under Rule 801.

**Ground Four:** The petitioner's Sixth Amendment right to confrontation was violated by improperly restricting the petitioner's right to cross examine the state's witness regarding the details of conviction for voluntary manslaughter when he denied his guilt.

**Ground Five:** The petitioner['s] Due Process rights were violated when the trial court allowed the state to introduce hearsay statements of state witness Latisha Giles in violation of Rule 801 of the Ohio Rules of Evidence.

**Ground Six:** The petitioner's right to due process was denied when the State of Ohio committed prosecutorial misconduct by improperly insinuating that the petitioner's investigator was unlicensed, although she knew that a license was not statutorily required for an individual to engage in investigatory activities of interviewing witnesses.

**Ground Seven:** The petitioner's right to due process was violated when the trial court erred and abused its discretion by preventing the petitioner from presenting a defense witness to testify concerning relevant issues.

**Ground Eight:** When the trial court allowed a flight instruction over the objection by the petitioner and this ruling petitioner's right to due process of law was violated.

Doc. 1, pp. 7-8.[2] On January 15, 2018, Respondent filed a Return of Writ (Doc. 6). Gales did not file a Traverse and the time to do so has passed.

## II. Standard of Review under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are

---

[2] Gales lists nine grounds for relief, but, in his Petition, Grounds Seven and Eight are identical. He provides pages of supporting facts, which the undersigned sets forth more fully below.

"still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.** Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to

comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Id.*  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

**Merits Review.**  In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving

an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id.*

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent. *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*,

562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also*

*Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state

court's ruling on the claim being presented in federal court was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for

fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

#### A. Ground 1 fails on the merits

In Ground 1, Gales argues that his due process rights were violated when the trial court

denied his motion to dismiss the indictment based on its finding that he "was not prejudiced by

the nearly 20 year delay in the prosecution of this crime."  Doc. 1, p. 15.  He asserts that the trial

court "failed to acknowledge" that he suffered actual prejudice because neither the 911 calls nor

the radio broadcast tapes were available to his defense at trial.  Doc. 1, p. 15.

The Ohio Court of Appeals considered this claim:

{¶ 15} The statute of limitations for a criminal offense is a defendant's primary
protection against overly stale criminal charges. *United States v. Marion*, 404 U.S. 307,
322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). However, both the Due Process Clause of the
Fifth Amendment and Article I, Section 16, of the Ohio Constitution afford limited
protection against preindictment delay. *State v. Adams*, Slip Opinion No. 2015–Ohio–
3954, ¶ 97. As such, this court has recognized that claims of preindictment delay must be
evaluated in terms of fundamental conceptions of due process and fundamental justice.
*See State v. Owens*, 8th Dist. Cuyahoga No. 102276, 2015–Ohio–3881, ¶ 8; *State v.
Jones*, 2015–Ohio–2853, 35 N.E.3d 606, ¶ 47 (8th Dist.).

{¶ 16} A defendant claiming a due process violation based on preindictment delay "must
present evidence establishing substantial prejudice to his right to a fair trial." *Id*. at ¶ 98.
There is no presumption of prejudice when the preindictment delay exceeds a particular
length of time. *Id*. However, a delay in commencing prosecution will not be justified
when the state uses the delay to gain a tactical advantage or through negligence or error
ceases its investigation and then later, without new evidence, decides to prosecute. *Id*.,
citing *Marion* at 324; *State v. Luck*, 15 Ohio St.3d 150, 158, 472 N.E.2d 1097 (1984).
{¶ 17} When a defendant makes a preliminary showing of substantial prejudice, the
burden shifts to the state to present evidence of a justifiable reason for the delay. *Adams*
at ¶ 99. The Ohio Supreme Court has stated that a defendant's burden to show

10

preindictment delay violated due process is "nearly insurmountable," in light of the fact that "proof of prejudice is always speculative." *Id*. at ¶ 100.

{¶ 18} Appellant makes the general claim that he was prejudiced by the loss of 911 or radio broadcast tapes and the fading memories of two key witnesses. It is well settled that "the possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice." *Adams*, Slip Opinion No. 2015–Ohio–3954, at ¶ 105. Further, a defendant must explain how the missing evidence has impaired his defense. *State v. Smith*, 8th Dist. Cuyahoga No. 100501, 2014–Ohio– 3034, ¶ 28. Substantial prejudice is not established when a defendant fails to explain the exculpatory value of missing evidence. *Adams* at ¶ 103–105 (finding defendant failed to show actual prejudice where defendant failed to explain how missing evidence might be exculpatory).

{¶ 19} Although the victim may not have remembered all of the details concerning how she met appellant or how the date was set up, she recalled the night of the rape in detail. The record reflects that she recalled the double date with appellant and the events that transpired at her apartment surrounding the alleged rape. She also immediately reported the rape, and she provided the police with a description of her attacker along with his nickname and pager number. Other witnesses in the case were also able to provide details concerning their observations from the night of the alleged rape. Physical evidence, including photographs, a rape kit, and the victim's nightgown were retained. Appellant has not demonstrated the loss of any exculpatory evidence in this case.

{¶ 20} Appellant also claims that he testified at the motion hearing that the police had his pager number, that he was interviewed by police in 1994, that he told them he had consensual sexual intercourse with the victim, and that he never heard from the police again. Appellant conceded that there was nothing in the police report indicating that he had been interviewed by the police. Although appellant claims the original detective is no longer available and the state could not prove that a follow-up report was not created, he may not rely on speculation or vague assertions of prejudice. Indeed, a defendant retains the burden of demonstrating substantial prejudice. *Adams* at ¶ 98–101.

{¶ 21} When a defendant fails to meet his burden to show substantial prejudice, it is unnecessary to consider the reasons for the preindictment delay. *Adams*, Slip Opinion No. 2015–Ohio–3954, at ¶ 107. Nevertheless, there is nothing in the record to suggest that the state used the delay to gain a tactical advantage. Also, this is not a case where the state through negligence or error ceased its investigation and then later, without new evidence, decided to prosecute.

{¶ 22} The record shows that the victim testified that she only knew the nickname of her alleged attacker. She looked through photos for hours to no avail. The case went cold. New evidence was uncovered linking appellant to the crime when the victim's rape kit was submitted for DNA testing in 2012. Thus, although the police may have ceased any active investigation in 1994, the delay in this case was not unjustifiable.

{¶ 23} We also recognize that cases involving this court's recent precedent in which prejudice has been found are distinguishable. *See Jones*, 2015–Ohio–2853, 35 N.E.3d 606 (8th Dist.); *State v. Mack*, 8th Dist. Cuyahoga No. 100965, 2014–Ohio–4817.[] In *Jones*, there was a lack of physical or forensic evidence, the loss of a witness who was present in the home at the time of the alleged crime and who the defense claimed would have corroborated his claims, and the state's failure to take action for a substantial period of time despite the identity of the alleged perpetrator always being known. In *Mack*, there was a lack of physical evidence, multiple witnesses were unavailable, and the defendant was being prosecuted for a crime he allegedly committed as a juvenile despite his identity always being known. Unlike those cases, appellant herein failed to demonstrate actual prejudice and there is nothing in the record to suggest that appellant has been deprived of due process or fundamental justice

{¶ 24} This case is more akin to *Owens*, 8th Dist. Cuyahoga No. 102276, 2015–Ohio–3881. In *Owens*, the victim gave a statement providing the first name of her assailant. *Id.* at ¶ 14. Years later, after the rape kit was submitted for testing and a positive result was obtained, Owens was indicted. There were no lost witnesses who could have corroborated the defense, and there was nothing to show prejudice in a manner consistent with the *Jones* case. *Id.* at ¶ 14. No abuse of discretion was found in the trial court's decision to deny the motion to dismiss. *Id.* at ¶ 15.

{¶ 25} Upon our review, we find the trial court did not abuse its discretion in determining that appellant had not established substantial prejudice and by denying the motion to dismiss. Appellant's first assignment of error is overruled.

*Gales*, 2016 WL 694560, at ** 2-4.

Gales has not shown that the Ohio Court of Appeals' decision was unreasonable.  First, his citations to cases regarding speedy trial rights (Doc. 1, pp. 16-17) are irrelevant because speedy trial rights attach at indictment or arrest, and Gales' complained-of delay was pre-indictment and pre-arrest.  *Brown v. Romanowski*, 845 F.3d 703, 712-713 (6th Cir. 2017) (speedy trial rights attach when the defendant is arrested or indicted, whichever is earlier, citing *United States v. Marion*, 404 U.S. 307, 320 (1971), *Maples v. Stegall*, 427 U.S. 1020, 1026 (6th Cir. 2005)).

The Ohio Court of Appeals applied the correct standard to Gales' claim, observing that a due process violation based on pre-indictment delay requires a defendant to show both substantial prejudice and a delay that was intentionally caused by the government to gain a

tactical advantage.  *Gales*, 2016 WL 694560, at *2; *see United States v. Lovasco*, 431 U.S. 783, 789-790 (1977) (to prevail in a claim of due process violation in a pre-indictment delay, the defendant must show actual prejudice and intentional government delay for the purpose of gaining a tactical advantage); *United States v. Marion*, 404 U.S. 322, 325-326 (1971).  The Ohio Court of Appeals explained that Gales could not show either.  It correctly observed that Gales did not explain how the lack of 911 call or radio broadcast tapes prejudiced him.  He did not detail what the witnesses, whose memories are alleged to have faded, would have testified to. *See Marion*, 404 U.S. at 325-326 (the possibility "that memories will dim, witnesses become inaccessible, and evidence be lost" is not sufficient to show prejudice from the delay).  There was no dispute that Gales had had sex with the victim in her apartment and that the victim thereafter called 911 and reported that she had been raped.  Before this Court, as on direct appeal, Gales fails to explain how an alleged lack of evidence prejudiced him.  In short, he does not show that the Ohio Court of Appeals' decision was not so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.  *Harrington*, 562 U.S. at 103.  Ground 1 fails on the merits.

**B. Ground 2 is not cognizable and/or fails on the merits**

In Ground 2, Gales argues that the state violated Ohio R. Crim. P. 16 and his right to due process when it failed to inform him prior to trial that a state witness had stated that he could make an identification in court.  Doc. 1, pp. 5.  This claim is not cognizable because Gales argues only that Ohio R. Crim. P. 16 was violated, which is an issue of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States").

To the extent Gales alleges a due process violation, his claim fails on the merits.  The Ohio Court of Appeals considered Gales' claim,

{¶ 26} Under his second assignment of error, appellant claims he was denied his right to a fair trial because the state failed to disclose prior to trial that a state witness might be able to identify appellant in court.

{¶ 27} The record reveals that the neighbor of the victim testified that on the night in question, he heard some banging and a woman screaming, he looked outside and saw a male pounding on the window of an apartment, and he saw the male's face before the male took off running. The neighbor provided a description of the suspect and what he was wearing to the police. However, he did not make any identification of the suspect prior to trial.

{¶ 28} The neighbor was able to identify the male as the appellant in the courtroom. On cross-examination, the neighbor testified that a couple weeks before trial he told the prosecutor that he could make an identification of the person he saw on the night in question. Defense counsel requested a mistrial because the prosecutor had not disclosed that the witness might be able to make an identification.

{¶ 29} Even if this amounted to a discovery violation, a trial court is permitted to make such order as it deems "just under the circumstances." Crim.R. 16(E)(3). The overall purpose of the discovery rules "is to produce a fair trial." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987). Under the circumstances herein, a mistrial was not warranted.

{¶ 30} An in-court identification generally will be upheld where the totality of the circumstances demonstrates that the in-court identification was reliable. *See State v. Monford*, 190 Ohio St.3d 35, 2010–Ohio–4732, 940 N.E.2d 634, ¶ 58. Here, the witness's in-court identification was based on his own observations and memory. The witness testified that he was about 25 feet from the male and saw his face, and the witness was able to provide a description of the male to the police. The in-court identification was made under oath and subject to cross-examination. During the cross-examination of the witness, defense counsel was able to elicit testimony concerning the witness's failure to inform anyone earlier that he could make an identification and challenge the witness's recollection. Further, defense counsel was able to point to inconsistencies from the trial during closing argument and suggest that the person knocking at the window could have been Z.T. Finally, even if the nearly 20–year delay was considered to impact the reliability of the identification, we do not find that the identification, or the lack of a curative instruction, denied appellant his right to a fair trial. Appellant's second assignment of error is overruled.

*Gales*, 2016 WL 694560, at *4-5.  The Ohio Court of Appeals applied the correct standard to

Gales' claim, considering whether his alleged error denied him the right to a fair trial.  *See*

*LaMar v. Houk*, 798 F.3d 405, 430 (6th Cir. 2015) ("Prosecutorial misconduct not invoking a

specific provision of the Bill of Rights [such as withholding discovery] is reviewed under the

general standard for due-process violations: whether the misconduct was so egregious as to deny the defendant a fundamentally fair trial[,]" citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643–645 (1974)).  It found that it did not.

Gales does not allege that the state Court of Appeals' decision was unreasonable.  He only complains that the witness "indicated that Gales had fled the apartment, which corroborates the State's version of events" and that this "makes clear the resulting prejudice."  Doc. 1, p. 22.  The undersigned disagrees that the resulting prejudice is made clear.  Gales does not dispute that he was at the victim's apartment that night and that he left the apartment after he had sex with the victim.  Ground 2 fails on the merits.

**C. Ground 3 is not cognizable and/or fails on the merits**

In Ground 3, Gales argues that his right to confrontation was violated when the trial court permitted witness testimony that amounted to hearsay under Ohio R. Evid. 801.  Doc. 1, p. 8.  To the extent Gales argues a violation of state evidentiary rules, this claim is not cognizable.  *See Estelle*, 502 U.S. at 67-68.  To the extent he alleges a Confrontation Clause claim, it fails.  The Ohio Court of Appeals explained,

> {¶ 31} Under his third assignment of error, appellant claims the trial court allowed the state to elicit testimony from a witness that constituted hearsay and violated his right of confrontation. The challenged testimony involved the testimony of Z .T., who is the father of the victim's child.
>
> {¶ 32} The victim testified that Z.T. arrived at the apartment within minutes of the rape. The police had not yet arrived. She testified that when she first heard the knock, she thought it might be the police and was also frightened that it could be the suspect returning to the scene. Z.T. testified that as soon as he got into the apartment, the victim immediately started crying and he asked what happened. She told him that she had just been raped and that she had called the police. The victim's statements were excited utterances under Evid.R. 803(2).
>
> {¶ 33} Evid.R. 803(2) allows a hearsay statement to be admitted into evidence if it relates "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." A declaration does not lose its character as an excited utterance when given in response to questioning that "(1) is neither coercive

15

nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." *State v. Jones*, 135 Ohio St.3d 10, 2012–Ohio–5677, 984 N.E.2d 948, ¶ 43, quoting *State v. Wallace*, 37 Ohio St.3d 87, 90–91, 524 N.E.2d 466 (1988), paragraph two of the syllabus. Because these requirements are met in this case, the statements were admissible as excited utterances. Further, because the victim testified and was subject to cross-examination at trial, there was no violation of the Confrontation Clause. Appellant's third assignment of error is overruled.

*Gales*, 2016 WL 694560, at *5.

Gales does not challenge the Ohio Court of Appeals' determination that there was no Confrontation Clause violation because the declarant testified at trial and was subject to cross examination. *See, e.g., California v. Green*, 399 U.S. 149, 158-161 (1970) (there is no Confrontation Clause violation when the declarant testifies at trial and is subject to cross examination). Gales does not argue that this decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Ground 3 fails on the merits.

### D. Ground 4 is not cognizable

In Ground 4, Gales argues that his right to confrontation was violated when the trial court improperly restricted his right to cross examine the state's witness regarding the details of his conviction for voluntary manslaughter when the witness denied his guilt. Doc. 1, p. 8. He argues that the trial court's ruling violated Ohio R. Evid. 611(B). Doc. 1, p. 28.

The Ohio Court of Appeals considered Gales' claim:

{¶ 34} Under his fourth assignment of error, appellant claims the trial court erred by limiting the cross-examination of Z.T. about his prior conviction for voluntary manslaughter. Appellant argues that the witness opened the door to inquiry into the details of the conviction by denying his guilt. However, the record reflects that Z.T. conceded that he pled guilty to the offense and he testified that he served time in prison. Upon being further questioned, he indicated that he pled guilty because he was advised to do so and he denied killing anyone.

{¶ 35} Generally, cross-examination of a witness on his prior convictions is limited to establishing the existence of the prior conviction and the name of the crime. *See State v.*

*Robb*, 88 Ohio St.3d 59, 71, 2000–Ohio–275, 723 N.E.2d 1019; Evid.R. 609. Here, the witness admitted to his prior conviction and the facts of that conviction had no relevance in this case. The trial court acted within its discretion in limiting the testimony. Appellant's fourth assignment of error is overruled.

*Gales*, 2016 WL 694560, at *6.

Because Gales only argues that the Ohio Court of Appeals' decision did not follow other

Ohio court decisions interpreting Rule 611(B), he has argued a state law, not a federal law,

violation.  Ground 4, therefore, is not cognizable.

### Ground 5 is not cognizable and/or fails on the merits

In Ground 5, Gales argues that his due process rights were violated when the trial court

allowed the state to introduce hearsay evidence from another state witness.  Doc. 1, p. 8.  The

Ohio Court of Appeals considered this claim,

> {¶ 36} Under his fifth assignment of error, appellant claims the trial court erred when it allowed the state to introduce hearsay statements from the victim's friend, L.G., who went on the double date and then went home. L.G. testified that a few days later she learned something had happened to the victim and she spoke to the victim about it. She described the victim as "scared" and "upset." L.G. further testified that she was upset because "it happened to [L.G.]'s sister" and that she wished she had gone to the apartment with the victim at the end of the date.

> {¶ 37} Appellant contends that the witness's testimony amounted to inadmissible hearsay and that the questioning was used to bolster the fact that the victim had reported to her friend that she had been raped. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Our review of the transcript reflects that the witness testified to the victim's demeanor and her own personal reaction to learning what happened to the victim. The victim's demeanor following the incident was relevant, and we find no prejudice from the admission of the testimony because several witnesses, including the victim, testified that the victim was upset. Further, even if we were to find that the trial court abused its discretion in the admission of the testimony, we find that the error is harmless. Appellant's fifth assignment of error is overruled.

*Gales*, 2016 WL 694560, at *6.

To the extent Gales alleges a violation of Ohio R. Evid. 801(C), his claim is not

cognizable because it raises only an issue of state law.  *See Estelle*, 502 U.S. at 67-68.  To the

extent Gales alleges a due process violation, he fails to explain, let alone allege, that the Ohio

Court of Appeals' finding was unreasonable, and Ground 5 fails on the merits.

**Ground 6 fails on the merits**

In Ground 6, Gales argues that prosecutorial misconduct occurred when the state

improperly insinuated that Gales' private investigator was unlicensed, even though the

prosecutor knew that Ohio does not require a private investigator to be licensed.  Doc. 1, p. 8.

The Ohio Court of Appeals considered this claim,

> {¶ 38} Under his sixth assignment of error, appellant claims the state committed
> prosecutorial misconduct by insinuating that the defense investigator was not licensed,
> when a license is not statutorily required. Appellant asserts that although R.C. 4749.03
> lists the requirements for private investigator and security guard provider licenses,
> attorneys are permitted to hire non-licensed investigators in connection with litigation.
> Appellant argues that the prosecutor's questioning was improper and prejudicial.
>
> {¶ 39} The record reflects that upon objection, the trial court provided a curative
> instruction to the jury and instructed them to disregard the question. The trial court also
> informed the jury that the statements of counsel are not evidence and struck the
> prosecutor's remark from the record. Even if we assume that the prosecutor's questioning
> was improper, any error was corrected by the trial court's instruction to disregard, which
> the jury is presumed to follow. *State v. Powell*, 132 Ohio St.3d 233, 2012–Ohio–2577,
> 971 N.E.2d 865, ¶ 154. There is no basis to conclude that the jury did not follow the trial
> court's instruction. Accordingly, appellant has not demonstrated prejudice, and we are
> unable to find that the prosecutor's question deprived appellant of a fair trial. The sixth
> assignment of error is overruled.

*Gales*, 2016 WL 694560, at *6-7.  Gales merely asserts, "[W]e still contend the prejudice is

apparent," and ignores the Ohio Court of Appeals' discussion that the trial court gave a curative

instruction that the jury was presumed to have followed.  Doc. 1, p. 33.  It cannot be said that the

Ohio Court of Appeals' decision was "so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement."  *Harrington*, 562 U.S. at 103.  Ground 6 fails on the merits.

**Ground 7 fails on the merits**

In Ground 7, Gales argues that his due process rights were violated when the trial court prevented him from presenting a witness to testify "concerning relevant issues."  Doc. 1, p. 8. The Ohio Court of Appeals considered this claim:

> {¶ 40} Under his seventh assignment of error, appellant claims the trial court abused its discretion when it precluded a defense witness from testifying. Defense counsel wished to call the victim's grandmother as a witness to show the victim had been less than truthful regarding the circumstances under which she left her family residence, which was two years before the alleged rape, and the victim's relationship with her child's father at that time. The trial court determined the proffered testimony was irrelevant to the case. Outside the presence of the jury, the trial court permitted defense counsel to voir dire the grandmother. The trial court was not persuaded to change its ruling.

> {¶ 41} A trial court has broad discretion to admit or exclude evidence. *State v. Thompson*, 141 Ohio St.3d 254, 2014–Ohio–4751, 23 N.E.3d 1096, ¶ 111. An admissibility ruling will not be reversed unless there has been an abuse of discretion and the defendant has thereby suffered material prejudice. *Id*. Here, the proffered testimony of the victim's grandmother was not relevant to the elements of the crime and was nothing more than extrinsic evidence being used to attack the victim's credibility. The exclusion of this testimony did not cause material prejudice, and the trial court did not abuse its discretion. Appellant's seventh assignment of error is overruled.

*Gales*, 2016 WL 694560, at *7.

Gales argues that courts have "doggedly maintained that the defense has an absolute right to present any evidence that may be relevant to the factual determinations made by a jury when the trial court could not have precluded the defense witness from testifying without even hearing any of the testimony."  Doc. 1, p. 34 (citing *Holmes v. South Carolina*, 547 U.S. 319 (2006) and *Crane v. Kentucky*, 476 U.S. 683 (1986)).  *Holmes* involved a trial court's exclusion of the defendant's proffer of evidence of third party guilt, 547 U.S. at 323-324, and *Crane* involved the trial court's exclusion of evidence surrounding the circumstances of the defendant's confession to cast doubt upon its validity, 476 U.S. at 685-686.  Neither control the facts in this case: testimony from the victim's grandmother focused on a time period two years prior to the rape that allegedly would have been used to challenge the victim's credibility.  Doc. 1, pp. 34-35.

19

The Ohio Court of Appeals found that the testimony was not relevant and Gales does not allege that this finding was unreasonable.  Ground 7 fails on the merits.

### Ground 8 fails on the merits

In Ground 8, Gales argues that his due process rights were violated when the trial court gave a jury instruction on flight.  Doc. 1, p. 8.  He claims that there was insufficient evidence of flight to warrant such an instruction.  Doc. 1, p. 35.  The Ohio Court of Appeals considered this claim:

> {¶ 42} Under his eighth assignment of error, appellant claims the trial court abused its discretion by allowing a flight instruction because he claims there was insufficient evidence to support the instruction.
>
> {¶ 43} An accused's flight is admissible as evidence of consciousness of guilt. *State v. Hand*, 107 Ohio St.3d 378, 2006–Ohio–18, 840 N.E.2d 151, ¶ 161. The decision whether to issue a flight instruction is a matter within the trial court's discretion. *State v. Dunn*, 8th Dist. Cuyahoga No. 101648, 2015–Ohio–3138, ¶ 48. In this case, there was evidence to warrant the instruction. The victim testified that after the rape, the rapist ran off from her apartment. The neighbor testified he overheard screaming, went outside, and saw the male who had been pounding on the glass run away from the scene. Finding no abuse of discretion, we overrule the eighth assignment of error.

*Gales*, 2016 WL 694560, at *7.  Gales does not challenge the Ohio Court of Appeals' factual finding that there was evidence supporting an instruction on flight.  Ground 8 fails on the merits.

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Gales' habeas Petition be

**DENIED** because Ground 4 is not cognizable, Grounds 2, 3, and 5 are not cognizable and/or fail

on the merits, and Grounds 1, 6, 7 and 8 fail on the merits.

Dated: May 15, 2018

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after the party objecting has been served with a copy of this Report and
Recommendation.  Failure to file objections within the specified time may waive the right to
appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see
also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).